Oh, yay. Oh, yay. Oh, yay. The Honorable Appellate Court, 5th District State of Illinois is now in session. The Honorable Justice Bowie presiding along with Justice Welch and Justice Barberas. First case this morning is 521-0360, People v. Jody Pullen. Arguing for the defendant appellant is Robert Hirshhorn. Arguing for the state appellee is Richard London. Each side will have 10 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note only the clerk is permitted to record these proceedings. Good morning, counsel. Good morning. Good morning. I hope I don't jinx this, but I think we've had several folks with some computer issues this morning. If somehow something goes a little haywire, obviously we'll stop, try to get that fixed. Hopefully we won't have those problems, but if something does, obviously we'll take care of that and make sure you guys have your proper time for your arguments. Mr. Hirshhorn, are you ready to proceed? Yes, I am, Your Honors. Then go right ahead. Good morning, Your Honors. Again, my name is Robert Hirshhorn. I'm with the Office of the State Appellate Defender, and I'm here representing Mr. Pullen. Before beginning, I wanted to thank the court, Mr. Flood's office, and Mr. London for allowing me to reschedule this argument. It was most gracious of everybody, and I do appreciate it. Now, here, Mr. Pullen was convicted of attempt murder and three counts of aggravated discharge of a firearm, and he received an aggregate sentence of 84 years. I'm not going to belabor the facts. I'm going to assume Your Honors are familiar with the facts. We raised two issues. One is a reasonable doubt issue, specifically whether or not the state was able to prove the lack of justification here, where they were relying almost exclusively on the testimony of Treveal Sutton, the attempt murder victim. The second issue is whether or not the improper other crimes evidence was adduced. I hope to address both of those in the time allotted. I would also like to point out, because I think it makes things easier for Your Honors to understand, that we attached a copy of one of the exhibits as an appendix to the record, so that you can figure out geographically where everything is. Now, turning to the reasonable doubt argument, the state, as I said, largely relies on its claim that Mr. Pullen was the initial aggressor and fired first. Because of that, they say he is not entitled to a self-defense. Now, the first thing I need to say is that Mr. Pullen and no defendant has to wait until he's been shot before he can exercise the self-defense. To put it as pithily as I can, he doesn't have to be dead before he shoots back. That is essentially what we're talking about here, what we're talking about here with regard to what went on in this alley. It was a shooting gallery. And I want to start out with the undisputed evidence, the physical evidence. We know that there were shots flying back and forth across this alley. Casings were found on both sides of the alley, and that is undisputed. It is undisputed that the experts could not say who fired first. It is undisputed that aside from Mr. Sutton, nobody tried to say that Mr. Pullen fired first. So, this case comes down to the credibility of Mr. Sutton, and his testimony, quite frankly, cannot be believed. It cannot sustain the verdicts here. He told a variety of stories over time regarding the sequence of events, what he knew, and when he knew it. We know that the car Mr. Pullen was in was struck six times. There were four bullets recovered from his car. That is undisputed. We know that those came from across the alley. And as long as we're discussing the shooting and the guns, two guns were recovered. But we know from the state's experts that there were at least four guns involved here, because neither of the two guns recovered can account, ballistically, for the shell casings found on either side. We also know that Sutton had to be working with somebody else is the only way I can phrase it here. Sutton's testimony was that he got out of the car, he was shot. He moves after, once the shooting stops, he goes to the vestibule or the entryway to Tres shown holding the gun, dropping it, picking it up, and then going back out. He then goes to a car where Brittany Tilly, I believe was the individual's name, helped stanch his wounds. He then was moved to an ambulance and taken to the hospital. The gun was not on his person when he got to the hospital. It wasn't on his person in the ambulance. It got disposed of somehow. In fact, it got disposed of a block and a half away. It had to have been perhaps the other shooter. We don't know. But this robs Sutton of some credibility, because we know that he's got this gun, and he's not even allowed to have a gun. He's a convicted felon. He freely admits that he shouldn't have had a gun. We also know that he has a number of priors, and when he was asked about those priors direct by the state, he dissembled. The possession of a controlled substance somehow in his mind was a marijuana until he was confronted with a certified copy of the conviction, when he finally had to admit, yeah, it was a controlled substance. He minimized the domestic battery as just a dispute until he was forced to admit again that, no, he was arrested for trying to strangle his fiance. Mr. Gilbert, if I may stop you for a moment, your brief was very thorough in discrediting Mr. Sutton for sure. One question I have, though, is in terms of the defense that's alleged as to who shot first, how do you address the state's mention in their brief of the evidence that was produced, the video evidence showing that no one in any of the vehicles in the vicinity flinched until Mr. Pullman stuck his arm out of the car window and started firing his gun? No one flinched, which you would expect to happen if you're in close proximity to gunshots being fired and you're not knowing that they're about to be fired. You're going to have some kind of physical reaction. Apparently, the video showed there was no reaction until Mr. Pullman's first shot. Well, Your Honor, I would point out several things. One, of all the videos shown, we're not talking about audio, so we don't know what he hears, A. And B, as I said initially, he's not required to wait until the gun is fired. If he perceives the threat, if he sees something that makes him think someone is about to shoot me, he can defend himself. I don't disagree with that. I'm asking what is it that points to that as Mr. Pullman being in imminent fear and couldn't leave, couldn't remove himself from the situation, that sort of thing? Well, let's point out that even according to the state's evidence, according to Mr. Sutton, prior to any shooting by anybody, somebody approached his car and there was an argument. I believe this was Qantas McGee, a juvenile who then went over to Mr. Sutton's car. And again, Mr. Sutton prevaricated there. At trial, he said that there was an argument. When he testified before the grand jury, he said that Qantas McGee said that Mr. Pullman said he was going to kill him. We don't know what Qantas McGee said to Mr. Sutton, but if there was an exchange of threats there, certainly he'd have reason to fear. And we know according to Mr. Sutton himself, that Qantas McGee went from that confrontation to Mr. Sutton's car, tapped on the window and to them in that initial exchange, before any shots were fired. So the fact that there wasn't a flinch is not dispositive here. If he perceived a threat, he was entitled to respond to it. The question becomes whether or not it's reasonable. And the point I'm trying to make here vis-a-vis Mr. Sutton, since he's the only one who says, Pullman shot at me, there was no provocation whatsoever. If Sutton can't be believed, what do we hang the finding of a lack of justification on? And this is why if I can just kind of shift a little bit now to the second issue, the other crimes issue, that's why that becomes so significant here. Because the state tried to provide motive here. They tried to provide motive through the other crimes evidence. That at some point, it was never specified how long ago, but at some point, several months before this, Malik Wright had his home burglarized, and everybody thought it was Mr. Sutton. And Malik Wright was a friend of Mr. Pullman, and therefore he transferred that animus to Mr. Pullman. And then he said that just a couple of weeks before this, Mr. Pullman was again shooting at him. This becomes the explanation, the motive for why he's shooting at this time. He's trying to complete what happened the first time. And now again, I want to turn back to Mr. Sutton and his credibility here, because Mr. Sutton before this jury says he doesn't know who was shooting at him. They were both masked. He couldn't make an ID. He speculates it must have been Mr. Pullman. And this is absolutely critical here. There is nothing more incendiary in a trial except for perhaps propensity evidence than other crimes with such disdain. The evidence that many courts have said is over persuasive. With juries, they tend to put too much into it. They may convict not because he's guilty of the crime charge, but because he's just a bad guy. And that's precisely what happens here. And we have a central problem again with the admission of this evidence, because the matrix, the factual matrix that allowed the circuit court on the pre-trial motion in Lemonade to admit the evidence that Pullman was not masked at that first instance, and therefore could be identified, disappeared by trial. When this case came to trial, he couldn't make that ID. Trial counsel did absolutely nothing. He should have been standing up and yelling, Your Honor, sidebar. I want to renew that objection now. The facts have changed. He didn't. And as a result, this jury was misled into convicting here based on a witness whose incredible, who contradicted himself, who lied. We have the whole Tavion Walker incident where he continued to lie until weeks after. And you pile on top of that, the other crimes evidence and counsel's failure to protect Mr. Pullman's rights. I see that I've run out of time. I'm perfectly willing to continue on. I'll let you go ahead and finish what you were talking about there. Okay. The other crimes evidence here just simply should not have been admitted. Even if we give the circuit court the benefit of the doubt that at the time it ruled that this was admitted as a continuing narrative motive and intent were the three grounds that the state had offered for it. Even if we accept that as being within the court's discretion when it ruled on the pre-trial motion, when Mr. Sutton testified at trial and said, Everybody was masked. I can't make an ID. The state's attorney seemed frankly shocked by it and tried to rehabilitate him. And then we got the line. Well, I put two plus two together and I guess it was Mr. Pullman. A guess is a conjecture and speculation is not a basis for allowing such incendiary evidence. Having said that, what I'd like to do is just reserve my remaining time for rebuttal and I thank your honors. And obviously you will have that time. Before we move on to Mr. London, Justice Barbaros or Justice Welch, do you have any questions? No questions. No. All right. Thank you. Mr. London, go right ahead. Good morning, your honors, counsel. Richard London on behalf of the people of the state of Illinois. Your honors, the only question that we really have in front of this court is whether the people negated any element of self-defense beyond a eloquently responds to the people's suggestion that they are really urging a reasonable hypothesis of innocence approach versus a beyond a reasonable doubt in the light most favorable to the people, argue that in their brief that the people failed to just prove a reasonable belief in self-defense because the incoming fire may have preceded defendant's firing. The people fully agree that defendant was not required to demonstrate that shots were fired at him in order to have a concern for self-defense. However, there has to be some concern for self-defense in order for the people to be able to prove that the people failed to prove a reasonable belief in self-defense. The people also argued that defendant argues that there was an argument, possible exchange of threats. Maybe it was individuals walking around and walking by. Defendant shows that he was not afraid. He was not in fear. How do we know that? We know that because Jalila urged him, let's get out of here. Let's leave the scene. At least let's roll up the window and ignore. None of that happened. They could have fled as did happen later. There was a car in front of Jalila, she testified, but she could have gone in reverse. More importantly, we see both defendant and Jalila still dancing on the videos, showing absolutely no concern or fear before, during, or after the purported threats. What the evidence does establish is that Sutton, who certainly has credibility issues, but no more and possibly even less than defendant and Jalila. Based on those three witnesses alone, the jury could have determined that in the life most favorable to the people, that the people negated at least one element of self-defense, but that's not all the evidence. Mr. Sutton was not the most important or the most damaging evidence. What was, was the testimony of the various police officers and the video and the testimony regarding the videos. The videos were played time and again, multiple times for the jury. The jury saw, as we argue in the people's brief, that there was no reaction whatsoever by defendant, by Jalila, by the woman in the car in front of the car that fled the scene until defendant fired a shot. Defendant didn't look upset. Defendant didn't look afraid. In addition to that, the jury could consider the significant evidence of consciousness of guilt. These included the fact that defendant fled the scene, not only fled the scene, which would not have been an unreasonable response, but fled the jurisdiction. Never reported anything to the police, never said, oh my God, I did this in self-defense. Jalila never contacted the police until defendant was finally caught and arrested two weeks later. Defendant then engaged in a series of lies. First, he says he wasn't at the scene. Then he claimed that Sutton got out of the prior to that. He didn't say that he was afraid of the, you know, this purported threats. He said that he was in fear after Sutton shot at the car. At trial, after seeing the videos and hearing the testimony of various witnesses, defendant changed his story yet again. He shot because Sutton displayed a gun and or was raising the gun towards him and was approaching the car. In addition, defendant had the reason why we don't have the weapon or weapons that were fired was because defendant turned over or had his mother turn over a gun that he knew was not used at the scene. Indeed, defendant never turned over the gun or guns that he used. Defected police detective Barrell indicated that defendant had stated that Sutton shot at him first and then he ducked and then he shot back. However, defendant testified that the videos from ABC Liquor and again, the videos themselves, which multiple witnesses testified to, and this court obviously can and should view, seems to show that defendant and Jalila, as I said, were dancing prior to defendant firing his gun. So displayed no fear or no concern that he needed to take some defense. In essence, the people that argue that the defendant was the, must have been the fastest shot in the Midwest in order for him to go from dancing to firing his weapon out the window before anyone, Jalila, defendant, the woman in the car, anyone at the scene, and the video showed not only Mr. Sutton, but multiple people fleeing after defendant fired his weapon. No one reacted to a purported shot. This completely negates the concept that you were asking about whether or not defendant has to fire a gun. No, defendant doesn't have to perceive and doesn't have to wait till he's dead or till someone shoots in his direction to establish self-defense, but defendant does have to establish that there was some fear or concern. However, the evidence here, not just Sutton, but all of the evidence, including the testimony of the other witnesses, including, which we did not highlight in a brief, but a waitress at the scene, and most importantly, the video showed that there was no force, unlawful or otherwise, threatened against defendant or his family. Not a gun and the alleged threats or purported threats, which defendant and Jalila were the only ones that claimed that these threats even existed. But again, defendant didn't react. Defendant was still dancing, so there was no force threat. Defendant shot first and was the aggressor. The danger of harm was not imminent until defendant fired his weapon, and more logically, it took a few seconds for someone, not Mr. Sutton, for someone to return fire. That is a much more logical and actually reliable occurrence, as opposed to defendant saying that a gun almost purported gunshot that no one else reacted to or heard. So again- I don't mean to cut you off, Mr. London, but you're running out of time. I want to make sure you get and address this other crimes evidence. The other crimes evidence, the trial court clearly did not abuse its discretion in admitting the evidence of other crimes, which was for the purpose of both established motive and course of conduct. Obviously, the motion in Limine was based on Truvial Sutton's grand jury testimony. If that grand jury testimony was testified to at trial, the evidence was appropriate for both of those purposes. I would agree with counsel that the people and defense counsel both appeared stunned that Mr. Sutton's testimony was completely different. It may well have been because this is the first time he was in front of defendant and was intimidated. Regardless, don't know or particularly care. The fact is that the testimony was different. So at that point in time, what could counsel have done? Counsel could have moved to strike, which would have emphasized and highlighted the grand jury testimony. But more importantly, as we stated more fully in our brief, the testimony could have been then admitted as substantive evidence of a prior inconsistency statement. Instead, counsel exercised trial strategy, which is virtually unassailable, to use that to impeach Sutton's credibility. He argued to the jury, was able to argue to the jury, Sutton's lying about something. We argue that it was collateral. More importantly, it wasn't this shocking evidence. The evidence of defendant's guilt and the evidence that the people negated at least one element of self-defense was so overwhelming that this evidence was, I seem like, may I finish my thought? Go right ahead. The evidence was so overwhelming that the jury could have determined the light most favorable to the people that an element, at least one element of self-defense is negated. Therefore, this evidence of other crimes was neither crucial, especially with the evidence that was, as I said, overwhelming. And more importantly, or as importantly, trial counsel clearly appeared to a strategic decision to use it in the fashion that he felt was best, which was impeaching the credibility of Mr. Sutton. For these reasons, we ask that this court affirm defendant's conviction. Well, thank you, Mr. London. Before we move back for rebuttal, Justice Barberis or Justice Welch, do you have any questions? No questions. No. Thank you. Thank you, your honors. Go right ahead with your rebuttal. Your honor, just to be brief about this, virtually every criticism that Mr. London just leveled against Mr. Pullen's credibility can be leveled against Mr. Sutton's credibility. Every last one of them. If your honors go back and review that argument and just substitute the name Sutton for Pullen, you come up with exactly the same mix. Let me ask you this, counsel. I'm not going to argue because both of these gentlemen's story changed throughout. There's no doubt about that. I think we all agree on that. The question is really, this was all brought out before the jury. The jury was told about it, arguments were made, and the jury made the finding that it did based upon all of this testimony that, let's just say, was all over the board. Your honor, let me respond to that in two ways. One, again, I would just rely on the Illinois Supreme Court's decision in Cunningham that reasonable people can sometimes act unreasonably. But putting that aside, that truism aside, there's the fact that this isn't an either-or. This isn't a, if you believe Jody Pullen, you must acquit, and if you believe Jody Pullen was lying, then you must convict. If Mr. Sutton's testimony is insufficient to create an abiding conviction of guilt, this court should reverse. When your honor says that neither of them is deserving of credibility, neither of them is. Fine. Then the verdict has to be overturned because there isn't sufficient credible evidence to sustain the verdict if you can't believe them. They are all over the place. Was all of this presented to the jury? Yes, and that's why the other crimes become so significant here. The way it paints Jody Pullen here as someone who was virtually hunting Mr. Sutton. He shot at him a couple of weeks before, and therefore we know that he had some animus and he was shooting at him this time, even though Mr. Sutton goes off the reservation when he is. This is an instance where you can look at it and say that counsel should have introduced the grand jury testimony. The grand jury testimony, frankly, was worse for Mr. Pullen than the trial testimony. What counsel should have done, and the reason we argued ineffective assistance of counsel is to the other crimes evidence, is he should have stood up there and said, your honor, we need a sidebar. We need to go to chambers. Things just change. We should, this jury should not have heard this, and then the question becomes if a jury isn't provided with that motive, if the jury doesn't know those facts because they should have been excluded, would they have returned this verdict? So when your honor says the jury heard all this and they reached a verdict, that verdict was colored by the use of this incendiary other crimes evidence where the connective tissue, the identity of the other shooter, was refuted by Mr. Sutton at trial. There is no escaping that fact. The other crimes evidence should not have come in. The verdict, I would suggest, your honor, would have been different. The ultimate test on other crimes evidence, after all, is does the probative value outweigh the prejudicial impact? And if he can't connect that to Judy Pullen, if he stands there and says, I don't know who it was, they were both wearing masks, it doesn't come in, and now the state's case has no motive whatsoever, and the jury is then asking itself the question, why? Why should we believe Sutton? Why should we believe that a chance encounter in an alley next to a liquor store and a restaurant resulted in a shooting gallery? Let me leave you with this thought. As to the other crimes evidence, if Travail Sutton can't say that the shooter was Jody Pullen, that evidence could have been used to paint any of the other shooters in that alley. It's just as connected to the guy across the alley who's firing at Mr. Pullen as it is to Mr. Pullen. If he can't say that guy was Jody Pullen, it doesn't come in, and if it doesn't come in, we've got a different ball game here. Unless there are any other questions, your honor, I say that I'm almost out of time. No questions. Justice Welch, Justice Barberis, any questions? No questions. Well, gentlemen, thank you so much. Obviously, we will take this matter under advisement, and we will issue and order it in due course.